# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,    CRIMINAL NO. 12-20052

v.          HON. STEPHEN J. MURPHY III

D-4 KENNETH ROBERT DANIELS,

    Defendant.

_____/

## **GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Barbara L. McQuade, United States Attorney, and Louis P. Gabel, Assistant United States Attorney, recommends that the Court impose a sentence of imprisonment of 16 months.   A sentence at the top of the guideline range is warranted because Defendant's criminal conduct supported a large-scale drug operation and helped conceal its activities from law enforcement.

1

## I.    FACTUAL BACKGROUND

### a. Offense Conduct

Daniels had extensive financial dealings with co-defendant Carlos Powell.   As part of his relationship with Powell, Daniels agreed to structure financial transactions for Powell so that Powell's finances would not be scrutinized and his criminal conduct would be less likely to be detected.   Specifically, the evidence at trial established that Daniels took $19,000 from Carlos Powell, broke that into two smaller amounts, and went to two separate banks to obtain cashier checks in an attempt to evade reporting requirements.

During interviews with law enforcement, Daniels was first asked about the September 24, 2010 cashier's check from TCF Bank in the amount of $10,000.   Daniels initially denied that he knew the purpose of the check, but then later admitted that he knew it was used by Carlos Powell to purchase a Mercedes.   Daniels also misled the agents by telling them that Carlos Powell gave him just $6,000 and that Daniels provided $4,000 of cash that he had on hand from recent casino winnings at Greektown Casino in Detroit, Michigan.   Casino records, however,

showed no such winnings by Daniels.

In addition, Daniels was asked about a second September 24, 2010 cashier's check for $9,000 from a second bank—Fifth Third Bank.   After being shown this check, Daniels admitted that Powell had instructed him to get two different checks from two different banks.   Daniels, who previous served as the Vice Chairman of the Insurance and Financial Services Committee while in the Michigan State Legislature, admitted that he was acting on behalf of Carlos Powell and that he split the larger amount into two smaller amounts so that the banks would not file reports that they were required to make.   Had Daniels not taken these actions, Carlos Powell would have been required to obtain the cashier checks himself and, thus, a CTR would have been filed in connection with Carlos Powell.

### b. Other Relevant Conduct

### i. Financial Dealings with Carlos Powell

In addition to the structured transactions on September 24, 2010, Daniels conducted numerous additional suspicious transactions with Carlos Powell.   Bank records show Daniels received thousands of

dollars from a company called International Outdoor LLC.   Shortly

after he received the funds, Daniels quickly transferred the majority of

those funds to Carlos Powell or companies controlled by Powell.   For

instance, Daniels deposited $15,000 checks in the bank account for

Kandico Enterprises, LLC ("Kandico")—a company owned and

controlled by Daniels—on April 21 and April 26, 2010.   On April 26,

2010, Daniels issued a check to Carlos Powell and Goal-Line LLC—a

shell company owned by Powell—for $12,750.   Aside from the two

$15,000 deposits, the check issued to Carlos Powell was the only

transaction that occurred in the Kandico account during the month of

April.   About one week later, On May 4, 2010, Daniels issued another

$12,750 check to Powell and Goal-Line LLC.   There were additional

transactions in Daniels' account similar to these transactions, including

multiple instances in which Daniels would receive $20,000 in his

account only to quickly withdraw the money to issue a check to Carlos

Powell for $17,000.

       During interviews with investigators, Daniels' stated that the

deposits into his account were for legitimate work that he did in scouting

locations for billboards in the city of Detroit.   Daniels explained the money cycling into his account and immediately back out to Carlos Powell by stating that he subcontracted the work to Powell, who scouted locations and took measurements and photographs of potential billboard sites.   Given the fact that Carlos Powell was involved in extensive drug trafficking that generated millions of dollars, this is a dubious explanation.[1]   Instead, it is more likely that Daniels was assisting Powell launder some of his drug money.

## ii. Bribery of a City of Detroit Official

In 2004, while Daniels was serving as a State Representative for Detroit, he also operated private copier and radio companies.   Daniels paid a $3,000 cash bribe to a high-ranking city official in the Kwame Kilpatrick administration in hopes that it would help his companies gain a contract with the City of Detroit.   He also paid a couple hundred dollars to the official at a nightclub, and would agree to provide suites or

---

[1] In his Presentence Investigation Report, Carlos Powell does not mention any business relationship with or subcontracting work performed for Kenneth Daniels or Kandico.   This omission further supports the view that Daniels was engaged in laundering drug proceeds for Carlos Powell.

event tickets for the city official when requested.   This was all done to curry favor with the official in hopes of earning government contracts.

## II.   SENTENCING GUIDELINE CALCULATIONS AND § 3553(a) FACTORS

In determining an appropriate sentence, district courts are to consider the factors set forth in 18 U.S.C. § 3553(a).   *See United States v. Booker*, 543 U.S. 220, 264 (2005).   "The Guidelines should be the starting point and the initial benchmark in determining a sentence and a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."   *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (quoting *Gall v. United States*, 128 S.Ct. 586, 601 (2007) (internal quotations omitted)).

In determining the appropriate sentence, the Court should not simply rely on the Guidelines calculations, but should consider all of the factors in the Sentencing Reform Act and, in particular, those set forth in 18 U.S.C. § 3553(a).   These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide

just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty; and (7) the need to provide restitution to any victims of the offense.

## A. Sentencing Guidelines

The Probation Department correctly calculated the guideline range as 10-16 months.   Given Daniels involvement in facilitating the movement and use of Carlos Powell's drug proceeds, a sentence at the top of this range is appropriate.

## B. Sentencing Reform Act Factors

### 1.   The Seriousness of the Offense

Daniels was convicted of the crime of "structuring," which, on its face, could be characterized as a relatively minor financial crime.   In this case, however, Daniels' structuring supported a large-scale drug

7

trafficking organization that pushed heroin, cocaine, and marijuana onto the streets of metro-Detroit.   Daniels helped ensure that reports on Carlos Powell's financial affairs were not filed, and thus Powell's criminal conduct was less likely to draw the scrutiny of law enforcement. Daniels, a former state legislator and Vice Chairman of the Insurance and Financial Services Committee, understood the importance of the banks' reporting requirements to law enforcement.   Given this context, Daniels structuring was a serious crime justifying a substantial sentence of imprisonment.

### 2.    History and Characteristics of the Defendant

Daniels criminal behavior extended beyond a single instance of structuring.   In fact, before Daniels became involved with Carlos Powell, he paid bribes to an official from the city of Detroit in an attempt to win business for his copier and radio businesses.   Once he became acquainted with Powell, Daniels engaged in a series of suspect financial transactions with Powell, including the churning thousands of dollars through his account and then back to Carlos Powell.

### 3.      Respect for the Law and Deterrence

Defendant's past behavior shows that, when he stands to make money, he is willing to break the law—either through bribery, money laundering, or structuring.   In such cases, a sentence of imprisonment can impress upon Defendant that there are consequences for blindly following his greed.

Additionally, in prosecutions for financial crimes, the sentence imposed is important to promote respect for the law and to deter the general public from committing similar future crimes.   General deterrence is a particularly important consideration in this case, which has received wide public attention.   If Daniels is given a lenient sentence, it will send a message that people can help drug dealers hide or launder their drug proceeds with little fear of severe punishment.

The Sixth Circuit recently emphasized, even outside the context of a wider drug investigation, the important role that prison sentences have in deterring financial crime in *United States v. Musgrave*, -- F.3d --, 2014 WL 3746811 (6th Cir. July 31, 2014).   It recognized that "[b]ecause economic … crimes are more rational, cool, and calculated

than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *Id.* at *5 (internal quotation marks and citations omitted).   With this in mind, and given the fact that Daniels' crime supported a significant drug organization, a sentence of imprisonment at the top of the guideline range.

### 4.   Need to Avoid Unwarranted Sentence Disparities

An important sentencing consideration is the need to avoid unwarranted sentencing disparities amongst similarly-situated offenders.   While the sentencing guidelines are often criticized by the defense bar, they provide a general gauge for the length of sentences that other offenders with similar criminal backgrounds are receiving across the country.   *See United States v. Wimbley*, No. 08-5787, 2009 WL 3296504, at *4 (6th Cir. Oct. 15, 2009) ("As one of the baselines for reasonableness review and relative uniformity in sentencing, *see United States v. Kirchhof,* 505 F.3d 409, 416 (6th Cir. 2007), the guidelines are designed to avoid unwarranted disparities—which means that whatever else may be wrong with a within-guidelines sentence, it is not likely to be an unwarranted disparity.").   Defendant can provide no reason for

10

the Court to deviate below the guideline range.   If anything, the guideline range understates the seriousness of Defendant's crime because it does not account for the fact that he was structuring deposits to support the leader of a massive drug operation.

## CONCLUSION

For all of the above reasons, the government respectfully recommends that the Court impose a sentence of imprisonment of 16 months.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney

s/Louis P. Gabel
LOUIS P. GABEL
STEVEN P. CARES
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9756
Louis.Gabel@usdoj.gov

Date: September 9, 2014

## CERTIFICATION OF SERVICE

I hereby certify that on **September 12, 2014**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

s/Steven P. Cares
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan   48226
Phone:   (313) 226-9756
E-mail: Louis.Gabel@usdoj.gov
